UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARGO ANDERSON,

     **Plaintiff,**

v.                            **CASE NO. 5:25cv108-MCR-MJF**

TOMMY FORD, et al.,

     **Defendants.**

_____/

## <u>ORDER</u>

Plaintiff Margo Anderson, formerly the mayor of the City of Lynn Haven, Florida, has filed a 137-page Second Amended Complaint, ECF No. 39, alleging constitutional and state law tort claims against County and City officials and contractors, including Defendant GAC Contractors Inc. ("GAC"). *See* 42 U.S.C. § 1983. Anderson alleges that certain contractors, including GAC, and individuals were engaged in a scheme to defraud the City and the Federal Emergency Management Agency ("FEMA") through false and inflated billing for hurricane debris cleanup work, and that after she began to expose the scheme, they fabricated evidence and made false statements to blame her for their fraud. Anderson alleges one count of state law intentional infliction of emotional distress and three counts of civil rights conspiracy against Defendant GAC, whose owner, Derwin White, now deceased, is alleged to have participated in the scheme. GAC has moved to dismiss,

ECF No. 67, and Anderson filed a response in opposition, ECF No. 70. *See* Fed. R. Civ. P. 12(b)(6). The Court finds that the motion should be granted in part and denied in part.

The facts as alleged in the Second Amended Complaint, ECF No. 39, are voluminous. The Court has largely detailed the facts in a prior order. ECF No. 71. The undersigned finds it unnecessary to enter another detailed order on the same facts and causes of action, and so incorporates the facts and conclusions reached previously in ECF No. 71, to the extent they are applicable here. The facts are supplemented below to show the allegations pertaining to Derwin White and GAC specifically.

As noted, GAC was owned by Derwin White. His nephew David Mickey White ("D. Mickey White") owned Erosion Control Specialist ("ECS"). Derwin White had a close personal relationship with Jimmy Stanford, a major at the Bay County Sheriff's Office ("BCSO").

Anderson alleges that ECS was involved in a fraudulent billing scheme after Hurricane Michael, using inflated and false invoices to defraud the City and FEMA out of public money. She alleges that Derwin's company, GAC, was submitting invoices with similarly inflated prices. Anderson had discovered $5 million worth of suspicious checks paid out to ECS and intended to report it to the Sheriff. When

CASE NO. 5:25cv108-MCR-MJF

she informed another city contractor, James Finch, of her intent to report the matter, Finch told Derwin White that he thought someone was stealing from the City and that Anderson had decided to report the matter to the Sheriff. At this, Derwin White became agitated and insisted that involving law enforcement was unnecessary. According to Finch, Derwin White said that the matter should instead be resolved without contacting authorities and that reporting the matter to the Sheriff would be "a big mistake." ECF No. 39 at 15 ¶ 78.

After Anderson reported the fraudulent billing to the Sheriff, a joint FBI and BCSO investigation began into potential corruption by ECS as well as others. Stanford was involved and allegedly steered the investigation away from his friend Derwin White and Derwin's nephew D. Mickey White toward Anderson. Stanford excluded Anderson from the interview process and tipped off Derwin White that there was going to be a search at ECS's business. It is alleged that Derwin White then directed D. Mickey White to create false invoices implicating Anderson that would be found in the search of ECS, attempting to deflect blame away from ECS

and GAC, which was invoicing similarly inflated prices.  The incriminating invoices were found and later used to show probable cause to arrest Anderson.[1]

D. Mickey White subsequently told investigators that Derwin White had instructed him to make invoices to show work at the mayor's property, that he and an employee of ECS prepared three invoices fabricating that ECS had performed work at Anderson's property, and that he gave the invoices to Derwin White.  He also stated that Derwin told him to "take care of" people like Standford, and as a result, ECS performed work for Stanford without pay.  D. Mickey White also told the FBI that he believed Derwin White had given Stanford money for a downpayment on a house, purchased a motorcycle for him, and paid for Stanford's sister's funeral.  During a 2022 evidentiary hearing, Stanford admitted accepting motorcycle and the funeral payment from Derwin White.

Anderson alleges that GAC's conduct through its owner Derwin White, who was acting in the course and scope of his relationship/ownership of the company, was outrageous, caused her emotional distress, and was part of a civil rights conspiracy with Stanford and others to arrest and prosecute her, in violation of her

---

[1] Anderson ultimately pled guilty to making a false statement to the FBI in exchange for the dismissal of many other criminal charges involving public corruption based on the invoices that showed the City had paid ECS for work at her private residence, among other things.

CASE NO. 5:25cv108-MCR-MJF

First, Fourth, and Fourteenth Amendment constitutional rights. GAC moves to dismiss, arguing that only Derwin White's individual conduct is alleged, not corporate conduct by GAC, and that Anderson has failed to allege a plausible § 1983 conspiracy involving GAC because it is not a state actor and the requisite nexus or joint action with any state actor is absent.

To survive a Rule 12(b)(6) motion to dismiss for the failure to state a claim, a complaint must contain sufficient factual matter that, taken as true, states a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility arises "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff's allegations are accepted as true and all plausible inferences are evaluated in the plaintiff's favor unless they conflict with attached exhibits or judicially noticed facts.[2] *See Edwards v. Dothan City Schs*., 82 F.4th 1306, 1310 (11th Cir. 2023); *see also Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (noting if general and conclusory allegations contradict the attached or

---

[2] The FBI 302 reports are "referred to in the complaint, central to [Anderson's] claim[s], and of undisputed authenticity." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (internal quotation omitted); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2007). These reports, as well as the related criminal case records (indictments, rulings, and guilty pleas) are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Therefore, judicial notice is appropriate.

referenced documents, the documents control); *Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) ("A court need not accept as true allegations in a complaint that contradict or are inconsistent with judicially-noticed facts.").

GAC argues that the intentional infliction of emotional distress claim (Count XIV) ("IIED") involves only Derwin White as an individual and therefore, dismissal is required.  The Court disagrees. To state a claim for IIED under Florida law, a plaintiff must allege that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (citing *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007)).  Contrary to GAC's assertion, Anderson's allegations taken as whole assert that GAC's owner Derwin White acted within the scope of his relationship as owner of the company.  She alleges that he sought to protect the company against the discovery of its alleged wrongdoing by directing the creation of false invoices to implicate Anderson instead and used that false evidence and also his friendship with Stanford to steer the investigation away from GAC and ECS and toward Anderson. At this stage, the allegations that Derwin White acted within the scope of his

CASE NO. 5:25cv108-MCR-MJF

relationship with GAC is plausible and the allegations of fabricating evidence and steering a criminal investigation towards Anderson to protect his company is sufficiently outrageous to state a claim.

The constitutional conspiracy claims fail in part. For the same reasons already set out in the Court's prior order, ECF No. 71, and incorporated here by reference, Anderson cannot establish a Fourth Amendment malicious prosecution claim because the favorable termination element cannot be met, and she cannot establish a substantive due process claim because it is based on the same facts as the malicious prosecution claim. "Where the Constitution 'provides an explicit textual source of constitutional protection' for the violation alleged, [courts] apply the analysis that constitutional provision requires, rather than the analysis dictated by 'the more generalized notion of substantive due process.'" *Alcocer v. Mills*, 906 F.3d 944, 955 (11th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

The First Amendment conspiracy claim against GAC, however, is plausible at this stage. To state a claim for relief under § 1983, "a plaintiff must allege that (1) the defendant deprived [plaintiff] of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Andre v. Clayton Cnty., Georgia*, 148 F.4th 1282, 1291 (11th Cir. 2025) (internal quotations omitted). The requirement for "acting under color of state law"

CASE NO. 5:25cv108-MCR-MJF

is satisfied if the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  A private individual or entity may be held liable in a § 1983 action if they acted in concert with state officials in depriving a plaintiff of constitutional rights.  *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 931 (1982) ("joint participation with a state official in a conspiracy" to deprive constitutional rights can establish liability under § 1983).

Anderson's allegations taken as a whole and viewing all inferences in her favor are sufficient to raise a plausible inference that Derwin White, acting as GAC's owner, participated in the fabrication of the invoices that provided probable cause for Anderson's arrest and indictment after being tipped off by Stanford, and he influenced the investigation to silence Anderson by providing gifts to Stanford, a state official investigating the matter.  Thus, a plausible inference has been raised that GAC, through Derwin, conspired with Stanford, a state actor, and possibly others to manufacture probable cause and prevent Anderson from exercising her First Amendment rights.  GAC is free to raise its arguments that Derwin acted only as a private individual on a fully developed record.

Accordingly, GAC's Motion to Dismiss, ECF No. 67, is **DENIED in part** and **GRANTED in part** as follows:

1.      **DENIED** as to the IIED claim against GAC (Count XIV) and the First Amendment conspiracy claim against GAC (Count XXX).

2.      **GRANTED** in all other respects.

**DONE AND ORDERED** this 26th day of July 2026.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**